# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 14, 2010

———————

No. 08-41083

Lyle W. Cayce
Clerk

———————

SHARON TAYLOR; JAMES DOUGLAS BOOKER; LOWRY BRILEY;
TWILAH BROWN; JAMES D CLARY; ET AL

  Plaintiffs - Appellants

v.

ACXIOM CORPORATION; CHOICEPOINT PUBLIC RECORDS DATABASE
TECH INC; CHOICEPOINT PUBLIC RECORDS, INC; CHOICEPOINT,
INC; CHOICEPOINT SERVICES, INC; SEISINT, INC; LEXISNEXIS REED
ELSEVIER, INC; CHEX SYSTEMS, INC, a Minnesota Corporation

  Defendants - Appellees

_____

SHARON TAYLOR, on Behalf of Themselves and all others Similarly
Situated; ET AL

  Plaintiffs - Appellants

v.

ACS STATE & LOCAL SOLUTIONS, INC, a New York Corporation;
GLOBAL 360 BGS, INC, a Texas Corporation; GILA CORPORATION, a
Texas Corporation; AMERICAN ELECTRIC POWER SERVICE
CORPORATION, a New York Corporation; SOUTHWESTERN BELL
TELEPHONE LP, a Texas Limited Partnership, doing business as
Southwestern Bell Telephone Company; AMERICAN MUNICIPAL
SERVICES CORPORATION; EUGENE R BUCCIARELLI; MICHAEL
DINAPOLI

  Defendants - Appellees

_____

SHARON TAYLOR, on Behalf of Themselves and all others Similarly

Situated; ET AL

       Plaintiffs - Appellants

v.

TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, a Texas Insurance Company; INSURANCE TECHNOLOGIES CORPORATION, a Texas Corporation; SOFTECH INTERNATIONAL, INC, a Florida Corporation; GLOBE LIFE & ACCIDENT INSURANCE COMPANY, a Deleware Insurance Company; HAWKEYE INSURANCE SERVICES, INC, a Texas Corporation; ISO CLAIMS SERVICES, INC, a Delaware Corporation, doing business as Insurance Information Exchange; UNITED TEACHER ASSOCIATES INSURANCE COMPANY, a Texas Insurance Company; SPARTAN INSURANCE COMPANY

       Defendants - Appellees
_____

SHARON TAYLOR, on Behalf of Themselves and all others Similarly Situated; ET AL

       Plaintiffs - Appellants

v.

SAFEWAY, INC, a Deleware Corporation; HEB GROCERY COMPANY, LP, a Texas Limited Partnership; THE HEARST CORPORATION, a Delaware Corporation, doing business as Houston Chronicle; SAFETY-USA INSTITUTE, LLC, a Texas Limited Liability Company; U S INTERACTIVE, INC, a Texas Corporation; THE TALBOT GROUP, INC, a Texas Corporation; BACKGROUND INFORMATION SYSTEMS, INC, a Texas Corporation; CARFAX, INC, a Pennsylvania Corporation; IMPACTINFO, INC, a Texas Corporation; WISHLIST, LLC, Represented by Carolyn Lehamnn, Member ABC DATA; AMERICAN STUDENT LIST CO, INC; ARISTOTLE INTERNATIONAL, INC; DONALD R BERLINER, JR; CONTINUEDED.COM, LLC; DENSPRI, LLC; DRIVER TRAINING ASSOCIATES, INC; FEDERATED RETAIL HOLDINGS, INC; HOUSEHOLD DRIVERS REPORT, INC; LEE FARISH COMPUTER SERVICES, INC; PARADISE DEVELOPMENT, INC; D B STRINGFELLOW, JR; TENANT TRACKER, INC

2

Defendants - Appellees

_____

SHARON TAYLOR, on Behalf of Themselves and all others Similarly Situated; ET AL

Plaintiffs - Appellants

v.

BIOMETRIC ACCESS COMPANY; CETEGY CHECK SERVICES, INC; EMAGINENET TECHNOLOGIES, INC; REI DATA, INC, doing business as Landata Information Services, Inc; LML PAYMENT SYSTEMS CORPORATION; TELECHECK SERVICES, INC; ALLIED RESIDENT/EMPLOYEE SCREENING SERVICE, INC; U S INTERACTIVE, INC; ACXIOM RISK MITIGATION, INC; ADP SCREENING AND SELECTION SERVICES, INC; AMERICAN DRIVING RECORDS, INC; COE INFORMATION PUBLISHERS, INC; EXPLORE INFORMATION SERVICES LLC; FEDCHEX LLC; JON LATORELLA; MARSHALL SYSTEMS TECHNOLOGY, INC; REALTIME-ID LP; SOURCE DATA, INC, Leslie Hanson for Deft; URAPI; PROPERTYINFO CORPORATION

Defendants - Appellees

_____

SHARON TAYLOR, on Behalf of Themselves and all others Similarly Situated; ET AL

Plaintiffs - Appellants

v.

FREEMAN PUBLISHERS, INC; BAYOUNET.COM, INC; CUSTOMER CONTACT, INC; DEFENSIVEDRIVING.COM; CROSS-SELL, INC; INFONATIONS, INC; REALTY COMPUTER SOLUTIONS, INC, doing business as Real-Comp; THE SERVICE BUREAU; LIST MANAGEMENT SYSTEMS; JUST TEXAS; DOMININ ENTERPRISES; DATA BANK USA; JOE WINKLEN CONSULTING; NATIONAL STATISTICAL SERVICE CORPROATION; WARRANTY USA; RELIANT ENERGY, INC; TXU BUSINESS; DALLAS COMPUTER ASSOCIATES

Defendants - Appellees

---

Appeal from the United States District Court
for the Eastern District of Texas

---

Before GARWOOD, DAVIS, and DENNIS, Circuit Judges.

GARWOOD, Circuit Judge:

Today, we decide whether the Driver's Privacy Protection Act (DPPA), 18 U.S.C., Chapter 123, §§ 2721-2725, allows states to turn over their entire drivers motor vehicle (DMV) database at the request of certain private entities. This case involves a class action seeking vast potential liquidated damages. For reasons stated below, we affirm the district court's dismissal of the action and hold that the DPPA affords states discretion to disburse DMV records for a permissible purpose under the statute.

This case began when the plaintiff-appellants, Sharon Taylor, et. al., filed six putative class action suits alleging violations of the DPPA against more than seventy-five defendants. The district court consolidated the six suits into the instant case. Most defendants joined in filing a Consolidated Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) (failure to state a claim), and 12(b)(1) (lack of subject-matter jurisdiction). The district court granted the motion and entered judgment dismissing plaintiff's suit with prejudice (including the *sua sponte* dismissal of the action as against defendants who had not joined the motion). The plaintiffs now appeal.[1]

## STANDARD OF REVIEW

This court reviews *de novo* the grant of a motion to dismiss for failure to state a claim. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839

---

[1] We note that although JI Speciality Services, Inc. is listed in the caption as a party defendant-appellee, heretofore, on July 9, 2010, said JI Speciality Services, Inc., only, was dismissed from these appeals under 5TH CIR. R. 42(b) pursuant to the stipulation of plaintiffs-appellants and said JI Specialty Services, Inc.

(5th Cir. 2004).  Plaintiffs must plead enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). We take the facts the plaintiff pleads as true.  *Id.* at 1965.  *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).  The court evaluates a 12(b)(1) motion *de novo* as well.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## BACKGROUND

Plaintiffs bring this class action against various defendants alleging misuse of DMV records in violations of the DPPA.  18 U.S.C. § 2721–2725. The plaintiffs represent a putative class of individuals with drivers licenses issued in the State of Texas.[2]  Upon certification of a lawful purpose, Texas allows individuals and companies to buy magnetic tapes of drivers licence records. TEX. TRANSP. CODE. § 521.050.[3]  The DPPA regulates driver's license records that

---

[2] Specifically, the proposed class definition included:

Each and every individual in the State of Texas whose name, address, driver identification number, race and/or date of birth and/or sex are contained in motor vehicle records obtained by Defendants from the State of Texas's Department of Public Safety, without the express consent of such individuals, from June 1, 2000, through the date of judgment herein.

Excluded from the class are persons who have expressly authorized the State of Texas's Department of Public of Public Safety to provide third parties with their "personal information" for any purpose; those persons whose information was obtained for a permissible purpose defined by the DPPA; all employees, including, but not limited to, Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Courts of the Eastern District of Texas, the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.

[3] Section 521.050(a) provides:

"(a) In addition to the provisions of this subchapter relating to the disclosure of driver's license information on an individual, the department [Department of Public Safety] may provide a purchaser with a magnetic tape of the names, addresses, and dates of birth of all license holders that are

contain "personal information" defined to include the names, photographs, social security numbers, drivers license numbers, addresses, telephone numbers, and medical and disability information of individuals. 18 U.S.C. § 2725(3). Plaintiffs allege that once a person certifies that they have a lawful purpose, the State of Texas provides magnetic tapes with its entire database of driver's license records information on all holders of a Texas driver's license. Like Texas, statutes (or

--------

contained in the department's basic driver's license record file if the purchaser certifies in writing that the purchaser is eligible to receive the information under Chapter 730."

Section 730.002 of the TEX. TRANSP. CODE provides that:
"The purpose of this chapter [Chapterr 730] is to implement 18 U.S.C. Chapter 123 [the DPPA] and to protect the interest of an individual in the individual's personal privacy by prohibiting the disclosure and use of personal information contained in motor vehicle records, except as authorized by the individual or by law."

Under § 730.007 the requesting party is to provide assurances to the Department of Public Safety (DPS) that the information furnished will be used only for purposes that are lawful under the DPPA. Permitted disclosures under § 730.007 extend only to name, address, date of birth and driver's license number. § 730.007(b). The requestor must represent that use of personal information "will be strictly limited" to listed uses permitted under the DPPA (excluding marketing, solicitations and surveys or uses based on individual consent), including

"(C) use in the normal course of business by a legitimate business or an authorized agent of the business, but only:
(i) to verify the accuracy of personal information submitted by the individual to the business or the agent of the business; and
(ii) if the information is not correct, to obtain the correct information, for the sole purpose of preventing fraud by, pursuing a legal remedy against, or recovering on a debt or security interest against the individual." § 730.007(a)(2)(C).

DPS regulations (37 TEX. ADMIN. CODE § 15.142) require a detailed form of agreement by the requestor, specifying, *inter alia*, each authorized purpose for which the records are requested and the like.
Plaintiffs allege that defendants acquired the challenged information in bulk from the Texas DPS. There is no allegation that such acquisition was other than in compliance with Texas law.

6

regulations) in at least eleven other states expressly allow this type of bulk distribution.[4]

Plaintiffs argue that obtaining personal information in this manner violates the DPPA.  Section 2722(a) provides:

> "(a) **Procurement for unlawful purposes.**—It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."[5]

The DPPA also provides a civil action against a "person who knowingly obtains, discloses or uses personal information from a motor vehicle record for a purpose

---

[4] ALA. ADMIN. CODE r. 810-5-1.485(6)(c)(1); ALASKA ADMIN. CODE tit. 2, § 92.200(c), *available at* http://www.legis.state.ak.us/basis/folioproxy.asp?url=http://wwwjnu01.legis.state. ak.us/cgi-bin/folioisa.dll/aac/query=[JUMP:'2+aac+92!2E200']/doc/{@1}?firsthit; ARIZ. REV. STAT ANN. § 28-455(E); COLO. REV. STAT. § 42-1-206(3.7)(a) (West 2004); DEL. CODE ANN. tit. 21, § 305(f)(2) (2005); GA. COMP. R. & REGS. 375-3-8.03(10)(a) (2009); 625 Ill. Comp. Stat. 5/2-123(a) (West 2008); Mich. Comp. Laws § 28.300(2), (3) (West 2004); N.H. Code. Admin. R. Ann. Saf-C 5202-08(a) (2009); N.Y. Veh. & Traf. Law § 202(4)(a)–(b) (McKinney 2009); W. VA. CODE § 91-8-7.14 (2009).

[5] Section 2722(b) provides:
> "(b) **False representation.**—It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record."

Section 2723 provides:
> "**§ 2723.  Penalties**
>
> **(a) Criminal fine.**—A person who knowingly violates this chapter shall be fined under this title.
>
> **(b) Violations by State department of motor vehicles.**—Any State department of motor vehicles that has a policy or practice of substantial noncompliance with this chapter shall be subject to a civil penalty imposed by the Attorney General of not more than $5,000 a day for each day of substantial noncompliance."

We also note in passing that as § 2723(a) makes knowing violation of the DPPA a crime, and accordingly to the extent that violation of the DPPA is at issue in even a civil case, to the extent of ultimate ambiguity in the statute's meaning it must be construed under the rule of lenity. *See U.S. v. Thompson/Center Arms Co.*, 112 S.Ct. 2102, 2110 (1992) (plurality opinion); *Crandon v. U.S.*, 110 S.Ct. 997, 1001-1102 (1990).

not permitted under this chapter." 18 U.S.C. § 2724(a).[6] To that end, the DPPA lists several permissible uses in section 2721(b):

(1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

(2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

(3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—

(A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

(B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

(4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or

---

[6] Section 2724(b) provides:

"**(b) Remedies.**—The court may award—

(1) actual damages, but not less than liquidated damages in the amount of $2,500;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorneys' fees and other litigation costs reasonably incurred; and

(4) such other preliminary and equitable relief as the court determines to be appropriate."

before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

Section 2721 goes on to provide:

"(c) **Resale or redisclosure.**—an authorized recipient of personal information (except a recipient under subsection (b)(11) or

(12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(11) or (12)). An authorized recipient under subsection (b)(11) may resell or redisclose personal information for any purpose. An authorized recipient under subsection (b)(12) may resell or redisclose personal information pursuant to subsection (b)(12)."[7]

Plaintiffs complain that the defendants in the instant case, pursuant to the Texas statute, buy DMV records in bulk from the Texas DPS. These defendants do not use all of the records immediately. They maintain databases or resell the information. They potentially could use any record in the normal course of their business for a permissible purpose under the DPPA. Plaintiffs do not complain that the defendants actually used any of the records for a purpose other than the ones listed in the DPPA. Instead, the plaintiffs complain that maintaining records not actually used for the defendants' stated purpose is itself an impermissible purpose under the statute. Stated another way, plaintiffs assert

---

[7] Section 2721(c) concludes by stating: "Any authorized recipient (except a recipient under subsection (b)(11)) that resells or rediscloses personal information covered by this chapter must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request." *See also* TEX. TRANSP. CODE § 7303.013:

> "(a) An authorized recipient of personal information may not resell or redisclose the personal information in the identical or a substantially identical format the personal information was disclosed to the recipient by the applicable agency.
> (b) An authorized recipient of personal information may resell or redisclose the information only for a use permitted under Section 730.007.
> (c) Any authorized recipient who resells or rediscloses personal information obtained from any agency shall be required by that agency to:
>> (1) maintain for a period of not less than five years records as to any person or entity receiving that information and the permitted use for which it was obtained; and
>> (2) provide copies of those records to the agency on request.
> (d) A person commits an offense if the person violates this section. An offense under this subsection is a misdemeanor punishable by a fine not to exceed $25,000."

Similar requirements are stated in the recipient's agreement with the DPS. *See* 37 TEX. ADMIN. CODE § 15.143.

that buying the records in bulk with an expectation and purpose of valid potential use is not a permissible use under the DPPA.

The plaintiffs characterize their suit as being against two types of defendants: resellers and non-resellers of the drivers license records. Plaintiffs argue that the DPPA requires resellers to have themselves made some permissible use of the information before they may resell the information. Here, the resellers took the personal information and sold it to third parties without using the information themselves. The plaintiffs do not allege that the third parties used the personal information for a purpose not permitted under the DPPA. And, the plaintiffs argue that the non-resellers violated the act by obtaining the personal information for purposes of "convenience and cost saving," and for continued future use, and these purposes are not permissible uses under the DPPA. They argue that a permissible purpose is required by the DPPA for each item of personal information contained in the entire bulk database obtained.

## ANALYSIS

### I.  Failure to State a Claim

The DPPA creates liability when three elements are met: (1) the defendant knowingly obtains, discloses or uses personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted. 18 U.S.C. § 2724(a); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008)."The plain meaning of the third factor is that it is *only* satisfied if shown that obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b)." *Id.* (emphasis added). *See also Reno v. Condon*, 120 S.Ct. 666, 670 (2000) (The section 2724 cause of action is for knowlingly obtaining, disclosing, or using the information "for a use other than those specifically permitted by the DPPA").

11

### A. Non-Resellers

We first address whether the non-resellers obtained personal information for a purpose not permitted under the DPPA. The non-resellers buy DMV records in bulk. Soon thereafter, they may use some of the records for a purpose permitted under the DPPA. The plaintiffs argue that as to the remaining records the non-resellers do not use them for a permissible purpose. In other words, the question is whether the statute allows bulk distribution of the records.

We hold that this type of bulk obtainment does not violate the DPPA. In interpreting statutes, this Court begins with the text of the statute. *Phillips v. Marine Concrete Structures*, 895 F.2d 1033, 1035 (5th Cir. 1990). Of the fourteen expressly listed permissible uses, only once does Congress limit a permissible use to *individual* motor records. 18 U.S.C. § 2721(b)(11) ("For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains."). And of these fourteen permissible uses, only once does Congress limit a permissible use to *bulk* distribution. 18 U.S.C. § 2721(b)(12) ("For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains."). For the remaining twelve permissible uses, the statute seems to have more than one reasonable interpretation: individual release, bulk release, or both.[8] *See in re*

---

[8] Other than 2721(b)(11) and (b)(12), the list of permissible uses does not refer to bulk or individual records. The statute does say, however, that "[p]ersonal information . . . may be disclosed as follows:" before listing the permissible uses. 18 U.S.C. § 2721(b). Section 2725(3) states:

> "(3) 'personal information' means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address( but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."

Congress sets forth rules of construction that explain, unless context indicates otherwise, "words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1. It seems well established, however, that this particular cannon is rarely applied

*Rogers*, 513 F.3d 212, 226 (5th Cir. 2008) (an ambiguous statute is susceptible to more than one reasonable interpretation).

It does not make sense that Congress would expressly limit states to individual distribution with one permissible use if Congress intended to limit *all* of the permissible uses to individual distribution. If Congress intended only individual distribution, one would expect either Congress to expressly limit all uses or, at least, to remain silent on the matter. Likewise, if Congress intended only bulk distribution, it makes no sense to expressly limit one of the fourteen uses to bulk distribution and not the others. The text of the statute strongly indicates that it allows both individual and bulk distribution. Bulk distribution is limited in only the instance of use for surveys, marketing or soliciations (plaintiffs do not allege such use here). The plain inference is that Congress allowed bulk distribution for other uses permitted by section 2721(b). *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

The purpose of the statute supports the conclusion that Congress intended bulk distribution. Representatives originally proposed the DPPA as a crime fighting measure. 139 CONG. REC. S15745-01, S15762 (1993) (Statement of Rep. Boxer). Congress originally passed it (as an amendment to the Crime Control and Law Enforcement Act of 1994) in response to the murder of actress Rebecca Schaeffer at the hands of a stalker. 140 CONG. REC. H2518-01, H2526 (1994) (Statement of Rep. Goss). This stalker used DMV records to find Schaeffer's unlisted home address. *Id.* The legislative history reflects the concern for

---

and only when doing so necessarily carries out the evident intent of Congress. *United States v. Hayes*, 129 S. Ct. 1079, 1085 n.5 (2009) (refusing to apply the rule because it conflicts with congressional intent).

victims of crimes committed using DMV records.[9] The totality of the legislative history clearly reflects that Congress did *not* intend to suppress legitimate business uses of motor vehicle records. Thus, Congressman James P. Moran, Eighth District of Virginia, the sponsor of the DPPA in the House, in his February 4, 1994 statement on the DPPA before the House Judiciary Committee Subcommittee on Civil and Constitutional Rights, explained:

> "*Careful consideration was given to the common uses now made of this information* and great efforts were made *to ensure that those uses were allowed under this bill.* Among those who will continue to have unfettered access are federal and state governments and their contractors, for use in auto recalls, by businesses (such as an insurance company) to verify the accuracy of personal information submitted by a licensee, for use in any civil or criminal proceeding, in research activities, and in marketing activities as long as the individual has been given the opportunity to opt out. The *bill would allow DMVs to continue to sell DMV information in bulk* as long as every driver in that state had been given the opportunity to restrict the sale of their name *for marketing purposes.*" (emphasis added). 1994 WL 212698 (F.D.C.H.) at 4.[10]

---

[9] *E.g.*, *The Driver's Privacy Protection Act of 1993: Hearing on H.R. 3365 Before the Subcomm. on Civil & Constitutional Rights of the H. Comm. on the Judiciary*, 103rd Cong. (1994) (Statement of Rep. Moran), 1994 WL 212698 (listing examples of violence committed after obtaining DMV records). None of these instances involved bulk distribution of DMV data.

[10] The "opt out" provisions of the original legislation with respect to bulk distribution for the purpose of use in surveys, marketing or solicitations in § 2721(b)(12) (and the similar "opt out" provisions of § 2721(b)(11)) were changed to the "opt in" provisions now in § 2721(b)(11) and (12) by the October 1999 amendments to the DPPA. Public Law 106-69.113 Stat. 986 (October 9, 1999).
Congressman Moran's February 4, 1994 statement also explains the reason for restrictions on direct marketing use, viz:

> "Most states sell DMV information in list form with personal identifiers (name, address, and/or social security number) to direct marketers for commercial purposes, but only five have a working "opt-out" system (a system allowing licensees to restrict the sale of their personal information). . . .
> . . .
> While the release of this information to direct marketers does not pose any inherent safety risks to people, it does present, to some people, an invasion of privacy. If you review the way in which people are classified by direct

14

Statements on the DPPA along the same lines were made by Congressman Moran and Congressman Gross on April 20, 1994 before the House. 140 Cong. Rec. H 2518-01, 1994 WL 140035 at 14, 15, 24.

Plaintiffs' reading of the DPPA leads to essentially absurd results. At a checkout line at a grocery store or similar establishment, when a customer wishes to pay by (or cash) a check, and presents a driver's license as identification, it is obviously wholly impractical to require the merchant for each such customer to submit a separate individual request to the state motor vehicle department to verify the accuracy of the personal information submitted by the customer, under section 2721(b)(3). Any such process would obviously take way too long to be of any use to either the customer or the merchant, and would moreover flood the state department with more requests than it could possibly handle. So, the merchant buys the state department's entire data base and from it extracts on that occasion that particular customer's information, and later performs the same task as to the next such customer in the line. Plaintiffs would have us hold that the merchant violates the DPPA by acquiring the data base even though every single actual use made of it is an authorized use under section 2721(b), so long as there is at least one name in the data base as to which no actual use is made. We reject that contention.

As the State of Texas points out in its amicus brief, under the plaintiffs approach, an attorney who buys a set legal reporters does not do so for the purpose of use for legal research *unless* that attorney plans on reading every opinion in every volume of those reporters. A lawyer will never read all the opinions in all 1,000 volumes of Federal Second (and may likely never read anything in at least a few of the volumes). But he or she still buys the reporter set for the purpose of legal research. We hold that the text and legislative history

marketers based on DMV information you can see why some individuals might object to their personal information being sold." *Id.* at 2.

15

dictate that when a person obtains motor vehicle records in bulk for one of the permissible uses listed in 18 U.S.C. § 2721(b), and does not actually use, or intend to use, any of the information in a manner prohibited by section 2721(b), then that person does not obtain the records for a purpose not permitted under Chapter 123 of Title 18.[11]

### B. Resellers

We now address the plaintiffs' claims against the resellers. The plaintiffs alleged that reseller defendants must first have themselves made a permissible use for the DMV records before they could resell to others under 18 U.S.C. § 2721(c). In their briefs and at oral argument, the plaintiffs could not articulate, and we could not find, any reason why Congress would require resellers to actually use the records before selling the records.[12]  Instead, plaintiffs simply relied on their reading of the text to produce that result. *But cf. Waggoner v. Gonzales*, 488 F.3d 632, 638 (5th Cir. 2007) ("We are mindful of the common mandate of statutory construction to avoid absurd results."). Not convinced, the

---

[11] The plaintiffs suggest that Congress intended the states to perform a gate-keeping function and distributing in bulk hinders the states' ability to keep track of these records. *See Locate.Plus.com v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 617 (Iowa 2002). The statute, however, expressly contemplates resale of the information once distributed. § 2721(c). Further, it creates a private right of action. § 2724. Resale makes it more difficult for the states to monitor use of the information. The individual right of action allows persons other than the state to check use of these records. The *Locate* opinion's "gate-keeping" theory is not persuasive of a congressional intent to preclude bulk distribution where actual use permitted under § 2721(b) is intended and no actual use not permitted under § 2721(b) is intended.

[12] In fact, solid reasons exist why Congress likely intended bulk distribution to resellers. Congress intended persons use these records for purposes such as preventing fraud when cashing checks. *E.g.*, 18 U.S.C. § 2721(b)(3). These are such uses that practically could not be performed individually, not only from the perspective of private companies but from the perspective of the states. For example, a credit card company may approve more than nineteen million credit card applications per year. *Personal Information Acquired by the Government Information Resellers: Is There Need for Improvement?*, *J. Hearing Before the Subcomm. on Commercial and Admin. Law and the Subcomm. on the Constitution of the Comm. on the Judiciary H.R.*, 109th Cong. 65–66 (2006). Ninety thousand applications are processed daily. *Id.* That alone may be 90,000 requests that a state would have to individually verify every day.

district court held that plaintiffs had no obtainment claim against the reseller defendants under the DPPA based on the reasoning in *Russell v. Choicepoint Servs. Inc.*, 300 F. Supp. 2d 450, 454–61 (E.D. La. 2004). It observed that section 2721(c) allowed "authorized recipients" to resell information. *Id.* This section did not require "authorized recipients" to also be authorized users under 18 U.S.C. § 2721(b). Therefore, authorized recipients did not need an authorized use before they could resell the information to those who did have a permissible use.

The plaintiffs counter authorized recipients must have an authorized use because the statute expressly refers to certain authorized recipients as being recipients "under" a permissible use. For example:

> "An authorized recipient . . . (except a recipient under subsection (b)(11) or (12)) . . .
>
> An authorized recipient under subsection (b)(11) . . .
>
> An authorized recipient under subsection (b)(12) . . ."

18 U.S.C. § 2721(c). Like the district court, we hold that the only reasonable construction of "authorized recipient" requires no actual use. Instead, an authorized recipient is authorized to resell to individuals for one or more of the specific purposes under section 2721(b). *See Russell v. Choicepoint Servs., Inc.*, 300 F. Supp. 2d 450, 455–57 (E.D. La. 2004) (The court goes into great detail in its careful analysis of "authorized recipient.").

Our construction of the statute alleviates the concerns the plaintiffs believe exist.[13] This construction allows "authorized recipient" to mean something

---

[13] In argument, plaintiff also relies on two cases. *See Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.*, 650 N.W.2d 609 (Iowa 2002); *Roberts v. The Source for Pub. Data*, No. 08-4167-CV-C-NKL, 2008 WL 5234675 (W.D. Mo. Dec. 12, 2008) (unpublished op.). Neither are binding precedent. *Locate.Plus.Com* observed that each permissible use exception listed a user and a specific use for the information. *Locate.Plus.Com., Inc.*, 650 N.W.2d at 617. It reasoned, therefore, Congress intended dissemination *only* to a "permissible user." *Id.* Just because the statute allows only certain types of people to use the information does not mean that the statute limits *possession* to those same individuals. The text of the statute contemplates uses and users in the list of exceptions; it contemplates resellers in a different subsection. 18

different than one who has a permissible actual use. *See Corley v. United States*, 129 S. Ct. 1558, 1566 (2009) (a court should give each word effect). It also gives meaning to the language of section 2721(c) that refers to recipients "under" subsection (b). 18 U.S.C. § 2721(c). An authorized recipient would be "under subsection (b)(12)," for example, if the State gives him the data for the purpose of reselling it to a person who uses it for marketing in conformity with (b)(12). There is no allegation that any of the defendants is not an authorized recipient under Texas law, which plainly provides for such resellers in a manner consistent with the DPPA. Moreover, the DPPA's criminal and civil sanctions police unauthorized recipients and users without a permissible actual use. 18 U.S.C. §§ 2723, 2724.

The Department of Justice issued an advisory opinion that supports this conclusion. On October 9, 1998, the Special Counsel to the Assistant Attorney General, in the Civil Division, issued an advisory letter opinion responding to the question of whether Massachusetts may release personal information to a commercial distributor who disseminates the information only to other authorized recipients or entities that use the information solely for authorized purposes. Unpublished Letter from Robert C. McFetridge, Special Counsel to the Assistant Attorney General, to Peter Sacks, Office of the Attorney General for the Commonwealth of Massachusetts (on file with this Court and as a part of the record below). This advisory opinion concluded that the DPPA allowed for such releases. *Id.* Because the Attorney General is expressly charged with imposing civil sanctions against States having a policy or practice of substantial

---

U.S.C. § 2721(b), (c). *Roberts*, on the other hand, makes a statutory construction argument that practically writes the reseller provision out of statute. *See Roberts*, 2008 WL 5234675, at *4 (reasoning that section 2722 prohibits obtaining information for any purpose other than a permissible use listed in 2721(b) would make no sense if a reseller can obtain information for a purpose other than one listed in 2721(b) — to resell information). Moreover, reselling to an authorized actual user is not itself an actual use.

noncompliance with the DPPA, this advisory opinion serves as persuasive support for the conclusion that a reseller may obtain DMV records and sell them without first itself actually using or intending to use those records. *See* 18 U.S.C. § 2723(b), note 4 *supra*. Moreover, since that Department of Justice opinion the statute has been amended (in October 1999) without any change which would alter that result.[14]

## II. Standing

We need not address the statutory standing issue because we have affirmed the district court's dismissal under Rule 12(b)(6). Verizon Commc'n Inc. v. Law offices of Curtis V. Trinko, LLP, 124 S.Ct. 872, 883 n.5 (2004) (citing *Steel Co. v. citizens for a Better* Environment, 118 S.Ct. 1003, 1013 n.2 (1998)).[15] While the district court did dismiss *sua sponte* some defendants who did not join the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants.

---

[14] We further note that the 1998 Department of Justice opinion is inconsistent with any notion that bulk distribution is itself necessarily prohibited by the DPPA, and thus likewise fully supports the position of the defendants non-resellers.

[15] *See also James v. City of Dallas*, 254 F.3d 551, 562 n.9 (5th Cir. 2001) ("In cases in which statutory standing is involved, we may address statutory standing before Article III standing.").

Assuming, *arguendo*, that we also need to address Article III standing, that too is present. It is undisputed that the DPPA protects from *certain uses or disclosures* personal information of plaintiffs and creates a federal cause of action for same, and that such personal information of plaintiffs was actually included in the challenged bulk distributions by Texas DPS. Moreover, plaintiffs' claim that such bulk distributions (including the personal information of these plaintiffs) are prohibited, and constitute a disclosure or use made illegal, by the DPPA which affords plaintiffs a federal cause of action for such disclosure or use of their personal information, though clearly without merit, is nevertheless not wholly insubstantial and frivolous, and hence gives the district court jurisdiction to decide whether or not the DPPA does preclude such distributions or uses. *See Bell v. Hood*, 66 S.Ct. 773, 776-77 (1946).

## CONCLUSION

We affirm the judgment of the district court.  We hold that a person who buys DMV records in bulk does so for the purpose of making permissible actual use of information therein under 18 U.S.C. § 2721(b), even if that person does not actually use every single item of information therein.  We also hold that the plain language of 18 U.S.C. § 2721 allows resale of DMV records to one who is authorized and proposes to make actual use thereof as permitted under section 2721(b) notwithstanding that the seller does not actually use or intend to use the records before resale.

AFFIRMED

DENNIS, Circuit Judge, concurring:

I fully agree with the majority's analysis of the Driver's Privacy Protection Act and its conclusion that the plaintiffs have failed to state a claim upon which relief can be granted. However, I believe that *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-101 (1998), requires us to decide whether the plaintiffs have Article III standing. "In [*Steel Co.*], [the Supreme] Court adhered to the rule that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). *See also, e.g.*, *United States v. Tex. Tech Univ.*, 171 F.3d 279, 287 (5th Cir. 1999); 13 Charles Alan Wright et al., *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3522, at 142 (3d ed. 2008).

The plaintiffs in this case have Article III standing for the reason stated in footnote 15 of the majority opinion: they allege that the defendants have used their personal information in a manner that is prohibited by the DPPA. Thus, their allegations fulfill the three requirements of the "irreducible constitutional minimum of standing": an injury in fact (i.e., the invasion of an interest which the plaintiffs argue is legally protected), which was caused by the defendants and which would be redressed by a judgment against the defendants. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "It is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co.*, 523 U.S. at 89. Thus, our holding that the plaintiffs have failed to state a valid claim under the DPPA does not alter the fact that the plaintiffs have Article III standing.

21