POSNER, Circuit Judge,
dissenting.
If federal courts followed the well-known precept of medical ethics primum non nocere (first, do no harm), the Village of Palatine, the defendant in this suit under the Driver’s Privacy Protection Act, 18 U.S.C. § 2721 et seq., would win; and likewise if the Act were interpreted literally. I am not a fan of literal interpretation. But it is the proper default rule when it has reasonable consequences and there is no indication that the legislature stumbled in trying to translate legislative purpose into words. The majority’s free interpretation of the Act is not needed to avoid absurd results or achieve the legislature’s purpose; it is unlikely to do any good; it is bound to do harm.
By incorporation of the definition of “personal information” found in 18 U.S.C. § 2725(8) — “information that identifies an individual, including an individual’s photo *610 graph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information” — the Driver’s Privacy Protection Act forbids “a State department of motor vehicles, and any officer, employee, or contractor thereof ... [to] knowingly disclose or otherwise make available to any person or entity ... personal information ... about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b).” § 2721(a)(1). The Illinois Department of Motor Vehicles, and its employees and contractors, are not defendants in this suit, but “an authorized recipient of personal information” from the department is — the municipal police department that ticketed the plaintiff; and it “may resell or redisclose personal information only for a use permitted under subsection (b).” § 2721(c).
So one goes to subsection (b) and finds in (b)(4) that “disclosure” of personal information is permitted “for use in connection with any civil, criminal, administrative, or arbitral proceeding 'in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.” A proceeding for the imposition of a parking fine is an administrative proceeding, and personal information on the parking ticket placed on the windshield of the alleged violator’s vehicle is “for use in connection with” an “administrative ... proceeding” in a “local court,” and specifically the “service of process” phase of the proceeding. The ticket is process; placing it on the windshield is the conventional method of serving process for parking violations; and so a literal interpretation is that the police can place personal information on the ticket.
There is no indication that without being able to express its intention in words Congress intended to forbid police to place personal information on a parking ticket. The Act does not limit disclosure that falls within one of its exceptions to what is “reasonable” or “necessary,” or authorize judges to impose such a requirement. The concern that gave rise to the statute was with stalkers who went to motor vehicle bureaus to obtain the home addresses of their intended victims, more than 30 states having made such information available to members of the public for a small fee as a means of enhancing state revenues. A television actress was murdered in 1989 by a stalker whose private investigator had lawfully obtained her unlisted address from the California Department of Motor Vehicles. That unfortunate incident was a catalyst of the Driver’s Privacy Protection Act. Taylor v. Acxiom Corp., 612 F.3d 325, 336 and n. 9 (5th Cir.2010); Pichler v. UNITE, 542 F.3d 380, 400 (3d Cir.2008) (dissenting opinion).
Palatine’s printing of drivers’ names and addresses on parking tickets that are then placed on violators’ windshields does not encourage or facilitate stalking. Only with difficulty can one imagine a stalker who, noticing a woman he’d like to stalk get into her car and drive off, follows her and when she parks lurks behind her car in the hope that it will be ticketed and that if that happens he’ll be able without being observed to peek at the ticket and discover the owner’s name and address. Has this ever happened? The plaintiffs lawyer admitted at oral argument never having heard of such a thing. A far more plausible strategy for a stalker who had come across his intended victim’s vehicle would be to follow her home, without having to rely on her parking illegally and the police coming along and writing a ticket rich in personal information.
*611 Why bend the statute to solve a nonexistent problem? Stalkers are not the only invaders of privacy, but who are the non-stalkers who peek at tickets on windshields and write down the information they find there? Are there any such? Is it wise to dislocate a statute in order to solve a problem that so far as anyone knows or can guess has never arisen and will never arise?
The majority opinion regards the placing of the name and address of the owner of the ticketed vehicle on the parking ticket as a gratuitous act that, harmless or not, serves no law enforcement purpose and therefore can’t be for a permitted use. Many, perhaps most, police don’t have time to place personal information on a parking ticket, because they would have to look up the information in the database of the motor vehicle bureau and write it on the ticket. Yet placing the information on the ticket serves a modest error-correction function, which presumably is why some police departments do place such information on parking tickets. Suppose the name or address of the vehicle’s owner is listed incorrectly in the motor vehicle bureau’s database, or the police copy the wrong name or address in writing the ticket. Or suppose the name and address are correct but the date of birth, the weight, or the height listed on the ticket is not that of the named person, thus indicating that there has been a mistake. The discovery of an error in the ticket may impel the owner to respond to the summons by informing the court that he is not the person named in it or that his true address and other personal information are different from what is written on the ticket; for he will worry that unless the mistakes are corrected he won’t receive any future communications from the motor vehicle bureau and other state and local agencies that rely on it for personal information.
This perhaps is small beer but on the other side is a nonexistent risk, whether of stalking or of some other harmful breach of privacy. And even if listing height and weight on a ticket is gratuitous, the majority’s decision is apt to entangle the courts in closer questions of the legitimacy of including particular personal information on a parking ticket, questions that will generate costly and time-consuming litigation and pointless wealth transfers from taxpayers to violators of the parking laws. The majority opinion does reserve the possibility that it might be permissible to write the owner’s name on the ticket. But it is a faint possibility, since the recipient will know who the owner is — himself, or a family member, or whomever he borrowed the car from — and so the inclusion of his name won’t be strictly necessary.
Because the statute does not place Palatine or any other community on notice that including personal information on a parking ticket is prohibited, every police department in the Seventh Circuit that has done such a thing within the four-year statute of limitation for private suits (see 28 U.S.C. § 1658(a); Hurst v. State Farm Mutual Auto. Ins. Co., Civ. Action No. 10-1001-GMS, 2012 WL 426018, at *9 (D.Del. Feb. 9, 2012)) faces, as a result of today’s decision, liability for “actual damages, but not less than liquidated damages in the amount of $2,500.” 18 U.S.C. § 2724(b)(1). So little Palatine (its population roughly one-fortieth that of Chicago) faces, in this class action suit filed on behalf of everyone who has received a parking ticket in the Village within the period of the statute of limitations, a potential liability of some $80 million in liquidated damages — more than $1,000 per resident.
The Village can obtain no succor from our decision in Sterk v. Redbox Automated Retail, LLC, 672 F.3d 585, 538 (7th Cir.2012), which held that a claim for liqui *612 dated damages based on identical language in the Video Privacy Protection Act, 18 U.S.C. § 2710, required proof of injury in the form of an actual invasion of privacy. The defendant in Sterk had failed in its statutory duty to destroy lawfully obtained documents containing personal information, but there was no indication that any of the documents had been disclosed to anyone before they were destroyed. In contrast, personal information is “disclosed” in a letter even if, because the letter was destroyed en route to the addressee, no invasion of privacy results. Similarly, if a city posted parking violators’ names and addresses on a publicly accessible website, the act of posting would be disclosure even if no one visited the website. So I don’t quarrel with the statement in the majority opinion that publicly posting information is “disclosure” whether or not anyone ever reads it or is likely to do so. But this just underscores the magnitude of the liability that the opinion fixes on Palatine.
The opinion states that it is “premature” to think about damages at this point. That is short sighted. Before creating a new cause of action, a court should consider the consequences.
And who will benefit most from the class actions that the majority opinion endorses and invites? Why, scofflaws, of course, because they have the most tickets, each now worth $2,500. From now until the statute is amended (unless today’s decision is reversed by the Supreme Court first), only a sucker would park legally in the Village of Palatine.