NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BRADEN WOODS HOMEOWNERS )
ASSOCIATION, INC., a Florida not for )
profit corporation; and LAKEWOOD )
RANCH MEDICAL CENTER, a Florida for )
profit corporation, )
 )
   Appellants, )
 )
v. )  Case No. 2D17-3795
 )
MAVARD TRADING, LTD., a BVI )
corporation registered to transact business )
in Florida; DOCTORS HOSPITAL OF )
SARASOTA, a Florida for profit corporation; )
JOHN R. BARNOTT in his official capacity )
as the Director of Building and )
Development Services for Manatee County; )
and MANATEE COUNTY, a political )
subdivision of the State of Florida, )
 )
   Appellees. )
_____ )

Opinion filed June 21, 2019.

Appeal from the Circuit Court for Manatee
County; Lon S. Arend, Judge.

Robert K. Lincoln of the Law Office of
Robert K. Lincoln, P.A., Sarasota, for
Appellant Braden Woods Homeowners
Association, Inc.

Jay Cohen of Cohen, Blostein & Ayala,
P.A., Fort Lauderdale, for Appellant
Lakewood Ranch Medical Center.

Christopher M. De Carlo and Anne M.
Morris of Manatee County Attorney's
Office, Bradenton, for Appellees Manatee
County and John R. Barnott.

Raoul G. Cantero, David P. Draigh and
Ryan A. Ulloa of White & Case, LLP,
Miami; and Walter J. Taché and Jennifer
Christianson of Taché, Bronis,
Christianson & Descalzo, P.A., Miami, for
Appellee Doctors Hospital of Sarasota.

Laurie A. Thompson, Susan H. Aprill and
Kirsten I. Baier of Fowler White Burnett
P.A., West Palm Beach, for Appellee
Mavard Trading, Ltd.

SILBERMAN, Judge.

Braden Woods Homeowners Association, Inc., and Lakewood Ranch Medical Center (the Plaintiffs) appeal a partial final judgment that dismissed with prejudice counts one, two, and three of their four-count amended complaint that seeks declaratory and injunctive relief.[1]  The Plaintiffs filed this action against Mavard Trading, Ltd. (Mavard), Doctors Hospital of Sarasota (Doctors), Manatee County (the County), and John R. Barnott in his official capacity as the Director of Building and Development Services for Manatee County (Barnott).  The Plaintiffs challenge the trial court's dismissal of Barnott as a defendant as well as the dismissal of counts one and two on appeal.  We affirm the trial court's order to the extent that it dismisses count three and dismisses Barnott from the lawsuit with prejudice, and we reverse the dismissal of

---

[1]We review the partial final judgment pursuant to Florida Rule of Appellate Procedure 9.110(k).

counts one and two and remand for further proceedings against Defendants Mavard, Doctors, and the County.

This action arose from the application to construct and operate a freestanding emergency room (FSER) on property owned by Mavard and leased to Doctors (the Property). Barnott administratively approved the final site plan (FSP) for the Property. Braden Woods represents the subdivision that abuts the shopping center where the property for the FSER is located. Lakewood Ranch is a competitor business that operates an emergency room as part of its licensed hospital, located within five miles of the FSER property.

The Manatee County Board of County Commissioners (the Board) approved a preliminary site plan (PSP) for the Property for a retail site by a 2009 ordinance (the 2009 PSP Ordinance). Upon Mavard and Doctors' application and after a public hearing on June 2, 2016, the Board amended the PSP only to extend the expiration of the PSP until April 2, 2018 (the 2016 PSP Ordinance). In May 2016, Mavard and Doctors applied for FSP approval for the FSER.

The Property is in the future land use category of Retail/Office/Residential. The Property is in a planned development district and is zoned as Planned Development Commercial (PDC) which allows clinics but prohibits hospitals. The Manatee County Land Development Code (LDC) did not define an FSER as it was a new business concept in Manatee County.

Robin Meyer, a division manager, reviewed the FSP application and correspondence. Meyer believed the FSER use would be a hospital and would not be a permitted use. Meyer requested a legal opinion from the Office of the County Attorney.

In a June 2016 email, Sarah Schenk, an assistant county attorney, stated that it was "unclear what analysis was applied to allow the change in use from retail as stated in Section 2 of [the 2009 PSP Ordinance] to a clinic or some form of emergency service facility without going through the public hearing process to amend the ordinance." Meyer told Doctors' representatives in July 2016 that the project would need a public hearing before the Board to change the retail use. Doctors' representatives complained to Barnott of the cost and delay of a hearing. Barnott fired Meyer in August 2016.

Barnott obtained additional information from Doctors about the FSER and reviewed the LDC and Florida Statutes. He issued a written letter of interpretation dated September 16, 2016 (the Code Interpretation). Barnott determined that the proposed FSER would fall within the category of clinic because, as detailed in the letter, the FSER was more like an urgent care facility or clinic than a hospital. He relied on sections 311 and 401.2 of the LDC in his interpretation. Relying on section 401.2, he stated the following:

> [W]henever there is any uncertainty as to the classification of a use, the Department Director shall determine the classification, if any, within which the use falls, based on its characteristics and similarity to other uses in the district. If a use has characteristics similar to more than one classification, the use shall be construed as the classification having the most similar characteristics.

But section 401.2 applies to standard districts, not planned development districts, as discussed in our analysis below. Because Barnott determined that an FSER was more like a clinic, he concluded that this would allow the proposed use at the site to be approved and reviewed by administrative permit rather than requiring approval by the Board.

- 4 -

Barnott, through staff, administratively approved the FSP on November 23, 2016. On December 7, 2016, Braden Woods sent a letter to the Board about the application for the FSER and stated its concerns regarding traffic and noise. In an email response on December 14, 2016, from the County's Building and Development Services Department, Braden Woods was informed of the timeline of the development of the FSER. Braden Woods was advised of the Code Interpretation of September 16, 2016, and the FSP approval of November 23, 2016. The County issued a building permit for the FSER on December 16, 2016.

The Plaintiffs filed the original complaint on February 17, 2017, and on April 13, 2017, filed the operative First Amended Complaint (the Amended Complaint). Count one of the Amended Complaint seeks relief pursuant to chapter 86, Florida Statutes (2016), the declaratory judgment statute, and the injunction provision in section 106.3.A of the LDC to declare Barnott's FSP approval and the FSP void and ultra vires and to enjoin the resulting violations of the LDC from the construction or operation of the FSER. Count two seeks relief pursuant to (1) chapter 86; (2) section 125.66(4), Florida Statutes (2016), the notice statute; and (3) section 106.3.A to declare Barnott's FSP approval and the FSP void and ultra vires because the County and Barnott violated the notice statute and to enjoin the resulting violations of the LDC from the construction or operation of the FSER. Count three, which is not at issue on appeal, deals with the extension of the time period for the PSP. Count four by Braden Woods, based on a settlement agreement, remains pending against Mavard and Doctors.

The Defendants filed motions to dismiss the Amended Complaint and asserted, among other things, that the Plaintiffs had failed to exhaust the administrative

remedies provided for in the LDC and that Barnott was not a proper party. After conducting a hearing on the motions, the trial court dismissed counts one through three against Barnott in his official capacity based on qualified immunity and because any declaratory or injunctive relief that the court might grant against the County would provide the Plaintiffs with the relief they seek against Barnott. The trial court dismissed counts one through three against all Defendants based on the Plaintiffs' failure to exhaust their administrative remedies and the failure to timely seek certiorari review. The trial court denied the motion to dismiss count four. As mentioned, the Plaintiffs challenge on appeal the dismissal of Barnott and the dismissal of counts one and two.

## I. DISMISSAL WITH PREJUDICE AS TO BARNOTT

The trial court erred in determining that Barnott was entitled to qualified immunity. However, the trial court's decision dismissing the counts against Barnott with prejudice is supported by the trial court's additional determination that because Barnott is an employee of Manatee County, any declaratory or injunctive relief that the trial court might grant against the County would provide the Plaintiffs the relief they seek against Barnott. Thus, suing Barnott in his official capacity is redundant to suing the County.

Our review of the dismissal of a complaint with prejudice is de novo. Neapolitan Enters., LLC v. City of Naples, 185 So. 3d 585, 589 (Fla. 2d DCA 2016). A motion to dismiss challenges the legal sufficiency of a complaint. Id. In considering a ruling on the motion to dismiss, we accept the allegations of the complaint as true. Id.

## A. Qualified Immunity

"Qualified immunity protects government actors performing discretionary functions from liability and suit for civil damages unless their conduct violates clearly established federal statutory or constitutional rights." Bd. of Regents v. Snyder, 826 So.

- 6 -

2d 382, 389-90 (Fla. 2d DCA 2002) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In Harlow, the Supreme Court specifically limited its decision to suits for civil damages and "express[ed] no view as to the conditions in which injunctive or declaratory relief might be available."  457 U.S. at 819 n.34.  Qualified immunity is a shield from liability for civil damages.  See Vermette v. Ludwig, 707 So. 2d 742, 745 (Fla. 2d DCA 1997); Town of Southwest Ranches v. Kalam, 980 So. 2d 1121, 1123 (Fla. 4th DCA 2008).  And qualified immunity is a shield from personal liability.  Dep't of Envtl. Prot. v. Envtl. Corp. of Am., 720 So. 2d 273, 274 (Fla. 2d DCA 1998).

Qualified immunity is not a defense to a claim seeking injunctive relief.  See Pearson v. Callahan, 555 U.S. 223, 242 (2009); Welch v. Theodorides-Bustle, 753 F. Supp. 2d 1223, 1228 (N.D. Fla. 2010).  Qualified immunity is also not a defense to claims seeking declaratory relief.  Welch, 753 F. Supp. 2d at 1228.  "Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."  Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 997 F. Supp. 1476, 1479-80 (M.D. Fla. 1998) (quoting Ratliff v. DeKalb County, 62 F.3d 338, 340 n.4 (11th Cir.1995)).  In addition, when defendants are sued in their official capacities rather than their individual capacities, they are not entitled to raise a qualified immunity defense.  Id. at 1480.

To the extent that the County relies upon Fuller v. Truncale, 50 So. 3d 25, 30 (Fla. 1st DCA 2010), to support the proposition that qualified immunity is applicable

even though the Plaintiffs are seeking only equitable relief, Fuller dealt with judicial immunity, not qualified immunity.

We conclude that the trial court erred in applying qualified immunity to claims for declaratory and injunctive relief against Barnott in his official capacity. Thus, the counts against him should not have been dismissed on that basis.

**B. Suit Against Barnott in his Official Capacity**

The County also argued that Barnott was not a proper party and that the remedy sought against the County would adequately address the relief the Plaintiffs sought. The trial court found that as a County employee "Mr. Barnott is subject to the authority of the [Board] and the County Administrator. Any declaratory or injunctive relief granted by the Court against the County would afford the Plaintiffs the relief they seek against Mr. Barnott." Because suing Barnott was redundant to suing the County, we affirm the dismissal with prejudice as to Barnott.

"A suit against a defendant in his official capacity is, in actuality, a suit against the governmental entity which employs him." Stephens v. Geoghegan, 702 So. 2d 517, 527 (Fla. 2d DCA 1997); see also Geidel v. City of Bradenton Beach, 56 F. Supp. 2d 1359, 1369 (M.D. Fla. 1999) (analyzing state law claims as being against the defendant city and dismissing the claims with prejudice against the officers in their official capacities). In De Armas v. Ross, 680 So. 2d 1130, 1131 (Fla. 3d DCA 1996), involving a suit filed under the Florida Whistle-blower's Act, the appellate court affirmed the dismissal of police officers sued in their official capacity when the City of Miami was also named as a defendant. The court stated that "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally

- 8 -

equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." Id. at 1131-32 (quoting Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991)). The court recognized that it would be redundant to keep both the City of Miami and the officers in their official capacity as defendants. See id. at 1132; see also Bright v. City of Tampa, No. 8:16-CV-1035-T-17MAP, 2017 WL 5248450, at *10 (M.D. Fla. May 17, 2017) ("The United States Supreme Court has ruled that a suit against a person in their 'official capacity' is merely an alternative means of pleading against the governmental entity, in the instant case, the City of Tampa." (citing Hafer v. Melo, 502 U.S. 21, 25 (1991))), aff'd on other grounds sub nom. Bright v. Thomas, 754 Fed. App'x 783 (11th Cir. 2018).

In Hatcher ex rel. Hatcher v. DeSoto County School District Board of Education, 939 F. Supp. 2d 1232, 1236 (M.D. Fla. 2013), aff'd on other grounds sub nom. Hatcher ex rel. Hatcher v. Fusco, 570 Fed. App'x 874 (11th Cir. 2014), the Middle District recognized that when the entity is named as a defendant, an official capacity claim may be redundant. However, the court refused to grant the defendant principal's motion to dismiss in a case involving the alleged violation of a student's First Amendment rights and claims seeking damages and injunctive relief. Id. at 1234-35. The court explained that the school board was "contesting any liability based on Fusco's conduct, and therefore it remains plausible at this stage of the proceedings that a separate official capacity claim can be maintained against Fusco." Id. at 1236.

Here, the Plaintiffs are not seeking damages, and they are seeking the same injunctive and declaratory relief against Barnott and the County. Barnott and the County have filed a joint brief and make the same arguments. In this case, the suit

against Barnott in his official capacity is redundant, and he would be bound as an employee of the County by any injunctive or declaratory relief granted. Thus, the trial court properly dismissed Barnott as a party with prejudice because the claims against him are redundant to the claims against the County.

## II. FAILURE TO EXHAUST ADMINISTRATIVE REMEDY OR SEEK CERTIORARI REVIEW

A party must exhaust available administrative remedies before seeking relief in the circuit court regarding the issuance of a building permit or review of a county's interpretation of its land development code. See Vanderbilt Shores Condo. Ass'n v. Collier County, 891 So. 2d 583, 585-86 (Fla. 2d DCA 2004). The failure to exhaust administrative remedies is typically an affirmative defense. See Wilson v. County of Orange, 881 So. 2d 625, 631 (Fla. 5th DCA 2004). But when the facts comprising "the defense affirmatively appear on the face of the complaint and establish conclusively that the defense bars the action as a matter of law, a motion to dismiss raising the defense is properly granted." Grove Isle Ass'n v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1089 (Fla. 3d DCA 2014) (dealing with affirmative defenses of statute of limitations and laches). Because a plaintiff may plead facts in a reply in avoidance of an affirmative defense, "the allegations of the complaint must also conclusively negate the plaintiff's ability to allege facts in avoidance of the defense by way of reply or dismissal is inappropriate." Id. at 1089.

The trial court dismissed counts one and two on the basis that the Plaintiffs failed to timely seek certiorari review under section 371 of the LDC and failed to exhaust their remedy under section 370. First we address section 371 regarding judicial review, and second we address section 370 regarding administrative appeal.

- 10 -

## A. Section 371

Section 371 of the LDC provides as follows:

**Section 371.  Appeals of Quasi-Judicial Decisions.**

Any final action, including final order, and/or any alleged impropriety of the approving authority may be appealed, within thirty (30) days of the date of the action taken, by any aggrieved person, including Manatee County, or any officer, or department thereof, with the appropriate court of record as provided by law.  All such appeals shall be filed with the court of record and shall include a petition, duly verified, setting forth that such decision is illegal, and/or improper, and specifying the grounds of the illegality.

The trial court determined that the Plaintiffs could have used this remedy, a judicial remedy, to challenge the Code Interpretation dated September 16, 2016, and the approval of the FSP on November 23, 2016.  We cannot agree because the Plaintiffs had no quasi-judicial decision for which they could seek certiorari review.

Relying on Board of County Commissioners v. Snyder, 627 So. 2d 469, 474-75 (Fla. 1993), the trial court stated "that decisions of local governments on building permits, site plans and other development orders are quasi-judicial action that may only be challenged by a petition for certiorari."  But in Snyder, a board of county commissioners conducted a hearing with input from citizens.  Id. at 471.  The Snyder court recognized that quasi-judicial action occurs at a hearing under certain circumstances.  See id. at 474.  An executive decision made by a single city official without a hearing is not quasi-judicial action.  See Pleasures II Adult Video, Inc. v. City of Sarasota, 833 So. 2d 185, 189 (Fla. 2d DCA 2002).  "A decision is judicial or quasi-judicial, as distinguished from executive, when notice and hearing are required and the

judgment of the administrative agency is contingent on the showing made at the hearing." City of St. Pete Beach v. Sowa, 4 So. 3d 1245, 1247 (Fla. 2d DCA 2009).

Because the issue here arises from an executive decision made by a County official without a hearing, there was no quasi-judicial action to review in this case, and certiorari review was not appropriate. See id. Thus, the trial court erred in concluding that the Plaintiffs had a remedy by certiorari review.

**B. Section 370**

Section 370 of the LDC provides as follows:

**Section 370. Appeals of Administrative Decisions.**

Appeals from decisions from any written order, requirement, decision, determination or interpretation made by an administrative official in the enforcement of these regulations shall be heard by the Board.

The trial court determined that the Plaintiffs could have used section 370 to appeal the Code Interpretation dated September 16, 2016, and the administrative approval of the FSP dated November 23, 2016. The Plaintiffs, a neighboring homeowners association and a hospital, did not seek the Code Interpretation or apply for the FSP. Thus, the County did not provide them with those decisions at the time they were made, and the Plaintiffs were never informed of any right to appeal. The Plaintiffs argue that the plain language of section 370 does not give a third party the right to appeal an administrative decision to the Board, while the Defendants argue that a plain reading of section 370 does not deny standing to third parties.

Section 370 does not specifically state who can appeal. But even if a third party to the Code Interpretation could not take an appeal to the Board, section 311.3 does allow "any person" to request a letter of interpretation. A person who seeks a

letter of interpretation can clearly appeal that interpretation under section 370, and as was done in this case, would be given notice of the right to appeal under section 370.

This court has determined that neighboring associations were required to seek an interpretation of a land development code themselves and then appeal to the board when they had previously challenged a development for the same property. Vanderbilt Shores Condo. Ass'n v. Collier County, 891 So. 2d 583, 584, 586 (Fla. 2d DCA 2004) (affirming the dismissal of a suit for declaratory relief and mandamus to challenge a building permit issued to property owners because the neighboring associations failed to exhaust their administrative remedies). Based on Vanderbilt Shores, the Plaintiffs arguably failed to exhaust their administrative remedies because there was an opportunity to seek a written interpretation under section 311.3 and to then take an administrative appeal of that decision under section 370.

But even if the Plaintiffs had an administrative remedy that they failed to exhaust, we determine below that the exception for ultra vires acts applies based on the facts pleaded. Thus, the trial court should not have granted the Defendants' motions to dismiss counts one and two as to all Defendants.

### 1. Ultra Vires Acts

The Plaintiffs argue that they did not need to exhaust any administrative remedy in order to challenge the Code Interpretation and the FSP approval as ultra vires acts. A local government "engages in an 'ultra vires' act when it lacks the authority to take the action under statute or its own governing laws." Neapolitan Enters., LLC v. City of Naples, 185 So. 3d 585, 593 (Fla. 2d DCA 2016) (quoting Liberty Counsel v. Fla. Bar Bd. of Governors, 12 So. 3d 183, 191–92 (Fla. 2009)); see also Corona Props. of

Fla., Inc. v. Monroe County, 485 So. 2d 1314, 1317 (Fla. 3d DCA 1986) (stating in an appeal from a final judgment declaring a building permit void that because the code did not grant a zoning official "the authority to determine when a property owner's rights have vested, the vested rights letter and the 1983 permit issued pursuant to such letter are *ultra vires* and *void ab initio*").

A judicially created exception to the exhaustion of remedies doctrine "provides that it is permissible to pursue declaratory relief in a circuit court—without first pursuing and exhausting administrative remedies—if 'an agency acts without colorable statutory authority that is clearly in excess of its delegated powers.' " Baker Cty. Med. Servs., Inc. v. State, 178 So. 3d 71, 75 (Fla. 1st DCA 2015) (quoting Dep't of Agric. & Consumer Servs. v. City of Pompano Beach, 792 So. 2d 539, 546 (Fla. 4th DCA 2001)). Court intervention is justified when the "agency action is unmistakably and irretrievably in excess of delegated powers." Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 689 So. 2d 1127, 1129 (Fla. 1st DCA 1997). "[J]udicial intervention with administrative action is justified only in those instances where the invalidity of the administrative act is not subject to reasonable differences of opinion." Dep't of Envtl. Regulation v. Falls Chase Special Taxing Dist., 424 So. 2d 787, 797 (Fla. 1st DCA 1982) (quoting Odham v. Foremost Dairies, Inc., 128 So. 2d 586, 593 (Fla. 1961)).

In Baker, the plaintiff hospital sought declaratory relief regarding the duration of a certificate of need that was issued for a new hospital. 178 So. 3d at 72. The defendants filed a motion to dismiss in which they argued that the plaintiff had not asserted its claim in the administrative forum. Id. at 74. The trial court dismissed the action with prejudice and stated that the Agency for Health Care Administration "did not

act without colorable statutory authority" in entering its challenged order. Id. At issue was whether the agency's actions were "clearly beyond the statutory boundaries" that regulated certificates of need. Id. at 75. The appellate court reversed the dismissal of the action because the statutory authority did not "allow an effective quadrupling of the statutorily set validity period" for the certificate of need. Id. at 78.

Here, section 311.1 of the LDC generally allows Barnott to make a formal letter interpretation of the LDC or Comprehensive Plan as it relates to a particular type of development on a particular property. Barnott made the Code Interpretation under section 311.2.A which provides for

> [a] determination of whether a particular use, which does not clearly fall under the definition of one of the uses specified in this Code and is not specifically allowed in the zoning district, is substantially similar to one of the permitted uses, Special Permit, or Administrative Permit uses allowed in the district and therefore should be allowed as such[.]

The Defendants argue that sections 311 and 401.2 allowed Barnott to issue written interpretations of the LDC or Comprehensive Plan. But section 401.2 applies to standard districts, not planned development districts which are governed by section 402. The Plaintiffs argue that Barnott had no authority under section 311 to interpret uses in planned development districts, citing to section 402.5 and Table 4-9, the "PD Use Table" (formerly Table 4-7). Section 402.5 is entitled "Schedule of Uses for PD Districts" and provides that "[u]ses of land or structures not expressly listed in the table are prohibited and shall not be established in that district." Table 4-9 shows that the PDC district allows clinics but not hospitals and does not mention FSERs. It also allows medical or professional offices and general retail sales.

Although section 311 allows Barnott to determine a classification, section 402.5 prohibits any uses in a planned development district that are not expressly listed. Furthermore, section 311.4.B provides that "no interpretation shall have the effect of amending, abrogating or waiving any standard or requirement established in this Code." Thus, Barnott did not have authority to determine that an FSER was similar to and falls within the category of a clinic in a PDC district.

The 2009 PSP Ordinance provides that the PSP was approved for a retail site. The title of the 2009 and 2016 ordinances also reference a Burger King and retail store. As to approval of an FSP, section 323.1.B provides that "[t]he Department Director shall review the Final Site Plan for conformance with the land development code." But that does not mean he could allow a use that effectively changed the permitted use that the Board allowed in the 2009 PSP Ordinance.

The Department Director may approve certain enumerated changes to an approved site plan. Manatee Cty. Land Dev. Code, § 324.2.A. For instance, Barnott had authority to add certain uses such as family care homes or change the use from multi-family to single family under specific circumstances. See id. at § 324.2.A.11, .12. All other changes require approval by the Board at a noticed public hearing. Id. at § 324.2.B. A substantial modification requires submission of a new application for PSP approval. Id. at § 324.2.C. One of the substantial modifications is "[a]ny change in use from the approved use, except as noted in subsection A, above." Id. at § 324.2.C.2.

The Plaintiffs argue that Barnott changed the use provided in the 2009 PSP Ordinance from retail to clinic or hospital. The 2016 PSP Ordinance amended the PSP only to extend the expiration date. Under section 324.2.C.2, a change of use

requires a new application and hearing before the Board. The Defendants contend that the PSP allowed a retail building on the property in the Retail/Office/Residential future land use category and that the Comprehensive Plan's definitions for retail uses include office uses for personal or professional services. See Manatee Cty. Comp. Plan, Element 1. But a clinic use and retail uses are separately listed on Table 4-9, and an FSER, interpreted by Barnott as similar to an urgent care clinic, is not listed on Table 4-9 at all. In a June 2016 email, Sarah Schenk, an assistant county attorney, stated that it was "unclear what analysis was applied to allow the change in use from retail as stated in Section 2 of [the 2009 PSP Ordinance] to a clinic or some form of emergency service facility without going through the public hearing process to amend the ordinance."

Here, there is no reasonable difference of opinion as to the invalidity of Barnott's acts discussed above. The LDC clearly did not allow him to find a use that was not expressly listed for a planned development district to be similar to another permitted use so as to allow the unlisted use. He also had no authority to administratively change the PSP permitted use from retail to an FSER, or something that he determined was similar to an urgent care clinic. Thus, the alleged ultra vires acts provide an exception to the requirement to exhaust available administrative remedies. See Baker, 178 So. 3d at 75. Therefore, the trial court erred in dismissing counts one and two for the failure to exhaust administrative remedies.

The Plaintiffs asserted two other exceptions to the exhaustion requirement. As discussed below, we conclude that they do not apply to this case.

**2. Notice Statute**

- 17 -

Count two of the amended complaint sought declaratory and injunctive relief based upon an alleged violation of section 125.66(4), Florida Statutes (2016) (the Notice Statute). The Plaintiffs sought a declaration "that Barnott's FSP Approval and the FSP are void because the County failed to provide the noticed public hearing required by the Notice Statute" and that the defense of failure to exhaust administrative remedies did not apply to claims for violation of the Notice Statute.

Section 125.66(4) provides in part as follows:

(4) Ordinances or resolutions, initiated by other than the county, that change the actual zoning map designation of a parcel or parcels of land shall be enacted pursuant to subsection (2). Ordinances or resolutions that change the actual list of permitted, conditional, or prohibited uses within a zoning category, or ordinances or resolutions initiated by the county that change the actual zoning map designation of a parcel or parcels of land shall be enacted pursuant to the following procedure:

The remainder of section 125.66(4) includes provisions for public hearings before the Board and the requirements for providing notice. Section 125.66(2)(a) also provides for a public hearing with notice when the Board amends any ordinance.

Section 125.66 applies when the Board takes action to enact an ordinance or resolution. See Op. Att'y Gen. Fla. 85-259, *5 (1985) (stating that section 125.66's provisions "regarding the enactment of ordinances and resolutions by a county would apply generally to such action when taken by the board of county commissioners"). The Plaintiffs basically argue that the challenged matters should have gone before the Board at a public hearing, but the Board did not enact or amend any ordinance or resolution. In David v. City of Dunedin, 473 So. 2d 304, 306 (Fla. 2d DCA 1985), which the Plaintiffs rely upon, this court stated that the plaintiffs "may make a general attack on

- 18 -

the validity of the ordinance through an injunction in circuit court, without exhausting their administrative remedies."  There, the city actually enacted two ordinances.  Id. at 305.  Again, in White v. Town of Inglis, 988 So. 2d 163, 164 (Fla. 1st DCA 2008), which the Plaintiffs also cite, the town commission actually enacted a resolution.  See also Bhoola v. City of St. Augustine Beach, 588 So. 2d 666, 667 (Fla. 5th DCA 1991) (stating that the city enacted a void ordinance because it did not comply with notice and hearing requirements); Linville v. Escambia County, 436 So. 2d 293, 294 (Fla. 1st DCA 1983) (dealing with county commission that enacted ordinance without proper notice).

Here, the Board did not enact or amend any ordinance or resolution, and section 125.66 does not apply.  Thus, the notice statute does not excuse any failure to exhaust administrative remedies.

### 3.  Injunctive relief under section 106.3.A

The Plaintiffs contend that they can seek injunctive relief pursuant to section 106.3.A of the LDC which deals with remedies for code violations and that the provision does not impose any requirement to exhaust administrative remedies. Section 106.3.A states the following:

> **Remedies.**  The Board of County Commissioners or any aggrieved person may have recourse to such remedies in law and equity as may be necessary to insure compliance with the provisions of this Code, including injunctive relief to enjoin and restrain any person violating the provisions of this Code, and any rules and regulations adopted under this Code, and the court shall, upon proof of the violation of the Code, have the duty to forthwith issue such temporary and permanent injunctions as are necessary to prevent the violation of the Code.

However, reading section 106 as a whole indicates that it does not apply to an allegedly ultra vires act by a county official or employee.

Section 106.3.B. provides that "[e]ach day that the violation shall continue shall constitute a separate violation." This normally would apply to a situation where a property owner had a condition on his property that was in violation of an ordinance. In addition, section 106.2.A provides, "In this section 'violation of this Code' does not include the failure of a County officer or County employee to perform an official duty unless it is provided that the failure to perform the duty is to be punished as provided in this Section." The Plaintiffs have made no allegation that there is a code provision to punish the failure to perform a duty as provided in section 106. Section 106.3.A is inapplicable to this action.

### III. CONCLUSION

Although the trial court erred in determining that Barnott was entitled to qualified immunity, the court correctly determined that the claims against Barnott are redundant to the claims against the County. Thus, we affirm the trial court's dismissal of Barnott as a party as well as the dismissal of count three. And while section 125.66(4) of the Florida Statutes and section 106.3.A of the LDC do not excuse the Plaintiffs' failure to exhaust any available administrative remedies, the alleged ultra vires acts do provide an exception to the exhaustion requirement. Thus, we reverse the trial court's dismissal of counts one and two as to Defendants Mavard, Doctors, and the County and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

VILLANTI and ROTHSTEIN-YOUAKIM, JJ., Concur.

- 20 -